IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

**LOUIS EDWARD MCGLYNN,**

           Plaintiff

v.

**FORD-UAW RETIREMENT PLAN
and FORD MOTOR COMPANY,**

        Defendants.

Case No. 22-12462

HON. _____
United States District Judge

HON. _____
United States Magistrate Judge

**CLASS ACTION**

## CLASS ACTION COMPLAINT

Plaintiff Louis Edward McGlynn, on his own behalf and on behalf of similarly situated participants, brings this action under the Employee Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* to declare his rights under the terms of the Ford-UAW Retirement Plan (the "Plan") and to enforce his rights and remedy violations of the Plan and ERISA.

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to § 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

2.    Venue is proper pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391 because the claims arose, the breach took place and the Plan is administered in this District, and Defendants may be found in this District.

**PARTIES**

3.     Plaintiff Louis Edward McGlynn ("Mr. McGlynn"), is a "participant" in the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).  Mr. McGlynn is a resident of Kentucky.

4.     Defendant Ford UAW Retirement Plan ("the Plan") is a defined benefit "employee pension benefit plan" within the meaning of § 3(2) of ERISA, 29 U.S.C. § 1002(2), which was established and maintained for the purpose of providing retirement benefits for participants and their beneficiaries, including Plaintiff.  The Plan is administered in Wayne County, Michigan.

5.     Defendant Ford Motor Company ("Ford" or the "Company"), a corporation with headquarters in this District, is the "administrator" of the Plan and a "fiduciary" with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).  Ford's main office is located in Wayne County, Michigan.

**GENERAL ALLEGATIONS**

6.     Mr. McGlynn was and is employed by Ford at the Kentucky Truck Plant for more than 23 years, from in or around May 1999 to the present.

7.     During his employment, Mr. McGlynn worked in the bargaining unit at the Kentucky Truck Plant in bargaining unit jobs represented by the United Automobile Workers union including, *inter alia*, working on the engine line,

working as a forklift driver, working in various positions in the Tire Room and working as finished vehicle driver and inspector and a test driver.

8.     By virtue of his employment, Mr. McGlynn became vested in the Plan and entitled to accrue benefits under the Plan.

9.     The Plan was established and maintained pursuant to one or more collective bargaining agreements between Ford and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW.

10.     The Plan document provides that employees accrue credited service under the Plan based on their "future service."

11.     Under the Plan, a participant's monthly benefit is determined by multiplying the participant's credited service by a benefit rate that is based on the employee's job classification and retirement date.

12.     Under the Plan, an employee receives one year of future service credit for each calendar year in which the employee receives pay from the Company for a requisite number of hours, a number which has been amended from time to time...

13.     Employees also accrue future credit under the Plan for certain periods of time that they are on leave or otherwise aren't working, including, *inter alia*, time that an employee is absent from work because of occupational injury or disease incurred in the course of such employee's employment with the Company and on

account of such absence, the employee receives Workers' Compensation while on Company-approved leave of absence.

14.     If an employee is absent from work because of occupational injury or disease incurred in the course of such employee's employment with the Company and on account of such absence receives Workers' Compensation while on Company-approved leave of absence, the employee is entitled to future service credit under the Plan based on forty hours a week during such absence.

15.     The Plan's Summary Plan Description reiterates the Plan's terms and provides that an employee continues to receive service credit if the employee is on "[a]pproved sick leave while receiving Workers' Compensation" and makes clear that so long as the compensable disability continues, the employee will continue to accrue service credit  even if Workers' Compensation benefits are terminated because of a state law that automatically terminates benefits after a certain length of time, or because an employee reaches a maximum medical improvement level.

16.     On or about May 27, 2010  Mr. McGlynn was injured on the job and suffered   physical limitations  as a result of which  he was unable to work for a significant period of time.

17.     Mr. McGlynn was absent from work on approved medical leave due to his injuries from on or about November 17, 2010 through January 10, 2014.

18.     Mr. McGlynn sought workers compensation benefits based on his May 27, 2010 work-related injury.

19.     Although Ford contested Mr. McGlynn's claim for workers compensation, an Administrative Law Judge ruled in favor of  Mr. McGlynn and awarded him workers compensation benefits covering the period from May 27, 2010 through November 13, 2019 along with ongoing medical benefits based on his occupational injury.

20.     Ford paid Mr. McGlynn the retroactive portion of his workers compensation award on or about December 12, 2013 and continued to pay Mr. McGlynn workers compensation benefits for his May 27, 2010 injury through on or about November 13, 2019.

21.     On or about November 21, 2014, Mr. McGlynn was injured in a work-related automobile accident when he was rear-ended by another car while he was test driving a Ford vehicle.

22.     Mr. McGlynn has been on approved medical leave since January 1, 2015 as a result of the November 21, 2014 accident and remains on medical leave of absence as a result of his work-related injury.

23.     Mr. McGlynn sought workers' compensation benefits for his November 21, 2014 injury.

24.     Once again, although Ford contested Mr. McGlynn's claim for workers compensation by order dated November 6, 2019, Administrative Law Judge ruled in Mr. McGlynn's favor and awarded Mr. McGlynn workers compensation benefits for the period November 21, 2014 through March 3, 2026 along with ongoing medical benefits based on his occupational injury.

25.     Ford paid Mr. McGlynn the retroactive portion of his workers compensation award on or about January 28, 2020 and continues to pay Mr. McGlynn workers compensation benefits for his November 21, 2014 injury.

26.     Based on his service from 1999 through the present, including the times Mr. McGlynn was on approved medical leave and receiving workers compensation benefits, Mr. McGlynn is entitled to at least 23 years of credited service as of the date of the filing of this Complaint.

27.     However, despite the facts that: 1) Mr. McGlynn was and remains on an approved medical leave of absence from May 27, 2010 through in or around January 10, 2014 and from January 1, 2015 to date as a result of work related injuries; 2) Mr. McGlynn received workers' compensation benefits for the periods he was on approved medical leave from May 2010 to January 2014 and again from January 1, 2015 to the present; 3) the Plan provides that an employee who is absent from work because of occupational injury or disease incurred in the course of such employee's employment with the Company and on account of such absence receives

Workers' Compensation while on Company-approved leave of absence, the employee is entitled to future service credit based on forty hours a week during such absence and 4) despite repeated efforts by Mr. McGlynn to obtain the service credit he is entitled to, Defendants have failed to provide Mr. McGlynn with credited service during all of the periods of his approved absences while receiving workers compensation benefits.

28.     The last summary Defendants provided to Mr. McGlynn purporting to set forth his credited service asserts that he is only credited with approximately 15 years of credited service rather than the more than 23 years of credited service that Mr. McGlynn is entitled to receive under the Plan.

29.     Defendants' failure to provide Mr. McGlynn with future service credit under the Plan during a portion of the period May 27, 2010 through in or around January 10, 2014 and for most of the period from January 1, 2015 to date violates the terms of the Plan and harms Mr. McGlynn, including, *inter alia*, by resulting in less credited service than Mr. McGlynn is entitled to receive under the Plan, thereby lowering his monthly retirement benefits under the Plan upon his retirement.

30.     Upon information and belief, similarly situated Plan participants who are on approved leave and receiving workers' compensation benefits for work related injuries and illness are likewise being denied future service credit covering the periods of their absences that they are entitled to under the terms of the Plan.

31.     After receiving a letter in or around December 2020  purporting to show that  his credited service was less than he is entitled under the Plan, Mr. McGlynn filed a claim for benefits on or about February 5, 2021.

32.     Ford denied Mr. McGlynn's claim for benefits by letter dated May 6, 2021.

33.     Ford's claim denial contains no reference to the Plan provisions governing accrual of credited service during periods of receipt of workers compensation, erroneously claims his request for workers compensation for his 2012 injury was not granted, fails to acknowledge his subsequent receipt of workers compensation for his 2014 injury and fails to provide any description of what additional material or information was necessary for Mr. McGlynn to perfect the claim nor an explanation of why such material is necessary.

34.     By letter dated July 1, 2021, Mr. McGlynn timely appealed the denial of his benefits.

35.     By letter dated September 1, 2021 that is postmarked October 11, 2021, Ford acknowledged Mr. McGlynn's appeal and stated that it needed additional time to research his claim and that he would be sent a "written response after the next Board meeting."

36.     Having received no response to his appeal Mr. McGlynn made several inquiries by phone including on or about September 10, 2021, October 22, 2021, January 4, 2022 and January 5, 2022.

37.     In violation of the Plan and ERISA and regulations thereunder, the Plan Administrator never responded to Mr. McGlynn's appeal and, to the best of Mr. McGlynn's knowledge,  has  failed adjust his service credit to the correct amount of service.

38.     Mr. McGlynn fully exhausted all required administrative remedies.

39.     By letter dated February 7, 2022, which was received by the Plan Administrator on February 11, 2022, for the fifth time Mr. McGlynn asked about a determination on his appeal and he made a written request to the Plan Administrator for Plan documents and information that are relevant to Mr. McGlynn's claim and appeal.

40.     Mr. McGlynn's February 7,2022 letter requested, *inter alia,* the following documents :

     a.  A complete copy of his pension file;

     b.  Complete copies of all documents relied upon in deciding his claim for benefits and appeal;

c.  Complete copies of all documents, records or other information submitted, considered or generated in the course of making a determination on his claim and appeal;

d.  Complete copies of all documents and information containing administrative processes and safeguards for ensuring consistent decision-making;

e.  Complete copies of the current Plan documents and the Plan documents in effect during his employment from the start of his employment through the present;

f.  Complete copies of all Plan amendments from the start of his employment to the present;

g.  Complete copies of the current summary plan description and summary plan descriptions in effect for the Plan from the start of his employment to the present; and

h.  A complete copy of the trust agreement for the Plan in effect from the start of his employment with Ford through the present, together with all amendments thereto.

41.  Mr. McGlynn received no documents or response to his request for documents until April 2, 2022 when Mr. McGlynn received a copy of  a current

summary plan description; none of the other documents he requested in his February 7,2022 letter were provided.

42.     By letter dated April 22, 2022, Mr. McGlynn's attorneys, on Mr. McGlynn's behalf, reiterated Mr. McGlynn's written requests to the Plan Administrator, again indicating that the requested documents were relevant to  Mr. McGlynn's claim and appeal.

43.     By email dated July 5, 2022, five months after Mr. McGlynn's request, the Plan Administrator first provided some, but not all of the documents that Mr. McGlynn had requested.

44.     Included with the Plan Administrator's July 5, 2022 email were copies of the current Plan document, current summary plan description, a document entitled "Credited Service Calculation" dated February 26, 2015, and what appeared to be some but not all of the documents that were considered, generated or submitted in connection with Mr. McGlynn's claim and appeal.

45.     The Plan Administrator's July 5, 2022 email did not enclose any prior Plan documents or summary plan descriptions including those in effect when Mr. McGlynn suffered his work related injuries and became eligible for workers compensation benefits.

46.     The Plan Administrator's July 5, 2022 email also failed to enclose all of the documents that were considered, generated or submitted in connection with

Mr. McGlynn's claim and appeal including, *inter alia*, at least one document that Mr. McGlynn was sent that was not included in the file provided by the Plan Administrator's attorney and, upon information and belief, multiple other documents that were relevant to Mr. McGlynn's claim and appeal because they were documents that were considered, generated or submitted in connection with Mr. McGlynn's claim and appeal.

47.     By email dated August 18, 2022, more than six months after receiving Mr. McGlynn's request for Plan documents and information, the Plan Administrator's attorney first provided the Trust Agreement and amendments thereto.

48.     Upon information and belief, the delay in providing Mr. McGlynn with requested documents and information did not result from circumstances beyond the control of the Plan Administrator.

49.     As of the date of the filing of this complaint, Mr. McGlynn has not received a response to his appeal nor has he received all of the Plan documents and information he requested, including Plan documents and summary plan description in effect when he suffered his work related injuries and began sick leave, nor has he received any Plan amendments, nor a complete copy of documents relevant to his claim and appeal that are required to be provided pursuant to ERISA claims regulations.

## CLASS ALLEGATIONS

50.     In addition to Plaintiff's individual claims for benefits and for violations of ERISA, this action is commenced pursuant to Fed. R. Civ. P. 23 as a class action consisting of the following class:

> All Plan participants who were absent from work because of occupational injury or disease incurred in the course of employment with the Company and on account of such absence received Workers' Compensation while on Company-approved leave of absence and who did not receive credited service of at least 40 hours per week during all such periods of absence and, if such individual is deceased, their surviving spouses and/or beneficiaries.

51.     Upon information and belief, the class is so numerous that joinder is impracticable because of the number of class members and because the members of the classes are geographically dispersed.

52.     Based on the Plan's public filings with the Department of Labor, there are more than 13,000 active participants under the Plan each year, a substantial number of whom, upon information and belief, incur occupational injury or disease in the course of their employment.

53.     There are questions of law and fact common to the members of the class that will be resolved by common answers, including whether declaratory and injunctive and other equitable relief is appropriate and whether benefits are due as a result of Defendants' violations of the Plan and ERISA including, *inter alia*:

   a.  Whether Defendants violated ERISA and/or the terms of the Plan by failing to provide credited service based on 40 hours a week to class members for periods of time they were on work related leave and received workers compensation benefits; and

   b.  Whether Defendants breached their fiduciary duties to the class

members by failing to administer the Plan in accordance with the terms of the Plan and ERISA.

54.     The claims of Mr. McGlynn are typical of the class members and Mr. McGlynn will fairly and adequately represent the interests of the class members. He has diligently pursued his claim and appeal and engaged the undersigned experienced ERISA and class action counsel.

55.     The prosecution of separate proceedings by the individual members of the class would create a risk of inconsistent or varying adjudications that would be dispositive of the interests of other members of the class who are not parties to the litigation or substantially impair or impede their ability to protect their interests.

56.     Upon information and belief, Defendants have acted or refused to act on grounds generally applicable to the class as a whole by engaging in the same violations of ERISA and the terms of the Plan with respect to the class, thereby making declaratory relief and corresponding injunctive and equitable relief appropriate with respect to the class as a whole.

57.     A class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy including, *inter alia*, because:

    a. the class members have suffered from the same violations of ERISA and the numbers and likely geographic diversity of class members make joinder impractical; and

    b. the high cost and likely necessity for actuarial experts to assist in the prosecution of the issues involved in this case, along with the relatively modest sums that may be involved for individual participants likely constitute a significant and recurring obstacle to the ability of individual class members to retain competent and experienced ERISA counsel and marshal the resources necessary to prosecute these ERISA violations in separate legal proceedings yet

likely have caused and will continue in the future to cause loss of valuable pension and ERISA rights unless remedied through injunctive and other appropriate relief.

## COUNT I
### (TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN PURSUANT TO ERISA SECTION 502(a)(1)(B))

58.   Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

59.   By the acts and omissions set forth above, Defendants violated the terms of the Plan.

60.   As a proximate result of Defendants' violations of the terms of the Plan, Plaintiff and class members were harmed and are being deprived of benefits due under the terms of the Plan.

61.   Section 502(a)(1)(B) of ERISA, 29 U.S.C. ' 1132(a)(1)(B), provides that:

A civil action may be brought -

(1) by a participant or beneficiary - . . .

*** 

(B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

62.     As a result of Defendants' violations of the terms of the Plan, Plaintiff and class members are entitled to judgment  declaring that Defendants violated the terms of the Plan, enjoining Defendants from continuing to violate the terms of the Plan and directing Defendants to recalculate Plaintiff's and class members' credited service and pay Plaintiff and class members all the benefits to which they are entitled including all benefits based on 40 hours per week for all periods in which Mr. McGlynn and class members were on approved leave for an injury or illness incurred on the job for which they received or are receiving Workers Compensation, together with pre-judgment and post-judgment interest, attorneys' fees and costs.

## COUNT II
## (TO REDRESS VIOLATIONS OF ERISA FIDUCIARY DUTY REQUIREMENTS)

63.     Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

64.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) provides in relevant part:

(1) Subject to Sections 403I and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–

(A)  for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an

enterprise of a like character and with like aims;
***

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

65.    Defendants have a fiduciary responsibility to administer the plan in accordance with ERISA and the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA, and to oversee the operation of the Plan and to remedy errors and omissions.

66.    By the acts and omissions complained of above, including, *inter alia*, by  failing to oversee and correct benefit errors,  by failing to determine Mr. McGlynn and class members' rights to benefits under the Plan in accordance with the terms of the Plan and ERISA, by failing to timely provide documents requested, by failing to decide his appeal in a timely manner and by depriving Plaintiff and class members of rights protected by ERISA and the terms of the Plan, Defendants breached their fiduciary duties to Plaintiff and class members.

67.    As a proximate result of Defendants' breaches of fiduciary duty, Plaintiff  and class members have been harmed and, *inter alia*, been deprived of rights protected by the terms of the Plan and ERISA

68.    Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3),  provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

69.    Pursuant to ERISA §§ 502(a)(2) and 502(a)(3), Plaintiff is entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants breached their fiduciary duties and

violated ERISA § 404 and applicable regulations; enjoining Defendants from failing to comply with the terms of the Plan and ERISA; surcharging the fiduciaries and enjoining Defendants to immediately make Plaintiff and class members whole by providing credited service and benefits based on such service in accordance with the terms of the Plan including if Plaintiff and class members have retired or retire during the course of this litigation; requiring Defendant to disgorge all profits and benefits gained from its breaches of fiduciary duty; and such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

## COUNT III
## (TO REDRESS VIOLATIONS OF ERISA'S CLAIMS PROCEDURE REQUIREMENTS)

70.     Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

71.     Section 503 of ERISA, 29 U.S.C. §1133 provides in relevant part: In accordance with regulations of the Secretary, every employee benefit plan                                                              shall--
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits   has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

72.     ERISA § 503, 29 U.S.C. § 1133, and regulations thereunder, 29 C.F.R. § 2560.503-1, provide that plan administrators must have a reasonable claim process, including processes for deciding claims and appeals and notifying plan participants of benefit determinations within specific time frames.

73.     ERISA § 503, 29 U.S.C. § 1133, and regulations thereunder, 29 C.F.R. § 2560.503-1, further provide that plan administrators, *inter alia*, must provide

claimants whose claims for benefits are denied with the specific reasons for the claim denial under the time frames set forth in the regulations, must provide claimants with documents and information showing that plan provisions have been applied consistently with respect to similarly situated claimants, must have administrative procedures and safeguards designed to ensure that benefit determinations are made in accordance with governing plan documents and that plan provisions have been applied consistently with respect to similarly situated claimants, must provide claimants with the reference to the plan provisions relied on in deciding claims and appeals, must provide a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary and must provide information relevant to an adverse benefit determination upon written request.

74.    By the acts and omissions set forth above, including, but not limited to, failing to provide a response to Plaintiff's appeal from the denial of his claim for benefits within the time frames required under the regulations, failing to provide Plaintiff with the information required to be provided in a claim denial, and failing to provide Plaintiff with relevant documents and information in response to his written requests, Defendants violated ERISA's claims procedure requirements.

75.    As a result of Defendants' acts and omissions set forth above, Plaintiff has been harmed and his rights to benefits and to pursue his claims were chilled, delayed and thwarted.

76.    Plaintiff is entitled to appropriate declaratory, injunctive and equitable relief, including an order enjoining Defendants to provide a reasonable claims process and to follow ERISA's claims procedure requirements, ordering that no deference could apply to any  benefit determinations, requiring Defendants to provide appropriate make-whole relief if Plaintiff retires during this litigation, surcharging the Trustees and ordering Defendant to disgorge all profits and benefits

gained from withholding Plaintiff's benefits and remedying Defendants' unjust enrichment together with pre-judgment and post-judgment interest, attorneys' fees and costs.

## COUNT IV
## (INDIVIDUAL COUNT TO REDRESS VIOLATIONS OF ERISA'S REQUIREMENTS TO DISCLOSE PLAN DOCUMENTS UPON WRITTEN REQUEST)

77.  Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

78.  Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4), provides in pertinent part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, and terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

79.  Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), provides in pertinent part:

> Any administrator. . .(B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper… For purposes of this paragraph, . . .each violation described in subparagraph (B) with respect to a single participant or beneficiary, shall be treated as a separate violation.

80.     Pursuant to the Debt Collection Improvement Act of 1996 (62 Fed. Reg. 40696) the $100 limit referred to in Section 502(c) of ERISA was increased to $110. 29 C.F.R. § 2575.502(c)(1) therefore states in pertinent part that: "The maximum amount of the civil monetary penalty established by Section 502(c)(1) of...ERISA [has been] increased from $100 a day to $110 a day."

81.     As set forth above, despite Mr. McGlynn's multiple written requests and Defendants' legal obligation to timely furnish documents, including Plan documents under which the Plan is established and maintained, the summary plan description and the trust agreement, Defendants delayed and failed to produce copies of documents under which the Plan is established and maintained to which Mr. McGlynn is entitled under ERISA § 104, 29 U.S.C. § 1024 and the regulations thereunder.

82.     As a result of Defendant Plan Administrator's acts and omissions set forth above, Mr. McGlynn has been harmed and his right to benefits and to pursue his claims for benefits were chilled, delayed and thwarted.

83.     Defendant Plan Administrator should be enjoined to timely furnish the requested plan documents and amendments and should be assessed a penalty of $110 per day for each separate document  that Defendants failed to provide for every day following 30 days after each of Plaintiff's multiple written requests for Plan documents that Defendant Plan Administrator failed to produce through the date the

requested documents are furnished to Mr. McGlynn, together with costs and attorneys' fees.

WHEREFORE, Plaintiff requests that Judgment be entered in his favor and on behalf of the classes against Defendants as follows:

A. Declaring that Defendants violated the terms of the Plan;

B. Declaring that Defendants violated ERISA §§ 102, 104, 404, 503 and regulations thereunder;

C. Enjoining Defendants from violating the terms of the Plan;

D. ERISA §§ 102, 104, 404, 503 and regulations thereunder;

E. Enjoining Defendants to recalculate Plaintiff and class members' credited service and retirement benefits, restore the benefits that were withheld and to ensure Plaintiff and class members are credited for all credited service under the terms of the Plan and make Plaintiff and class members whole for all losses, including pre-judgment and post-judgment interest;

F. Ordering Defendant Plan Administrator to disgorge the value of the benefits unjustly withheld from Plaintiff together with all profits attributable thereto;

G. Surcharging the Plan Administrator for the full amount of Plaintiff and class members' withheld benefits and such other amounts to make Plaintiff and class members whole;

H. Awarding Plaintiff's attorneys' fees and costs pursuant to ERISA §502(g) and/or the common fund theory, and

I. Awarding such other and further relief the Court deems just and proper.

Respectfully submitted,

<u>s/Robert B. June</u>
Robert B. June Law Offices of Robert June, P.C.
Attorney for Plaintiff
415 Detroit Street, 2nd Floor
Ann Arbor, MI 48104-1117
Phone: (734) 481-1000
Primary E-Mail: bobjune@junelaw.com
Attorney Bar Number: P51149

Dated: October 13, 2022