UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS EDWARD MCGLYNN,

      Plaintiff,

                                  Civil Case No. 22-12462

v.                                 Honorable Linda V. Parker

FORD-UAW RETIREMENT PLAN,
*et al.*,

      Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS (ECF NO. 23)

On October 13, 2022, Plaintiff Louis Edward McGlynn ("Plaintiff") initiated this lawsuit due to the denial of service credit under the terms of his retirement plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. ch. 18 § 1001 *et seq.*  (ECF No. 1.)  On January 9, 2023, Plaintiff filed an Amended Complaint against the Ford-UAW Retirement Plan, Ford Motor Company, and Ford-UAW-Retirement Plan Board of Administration (collectively "Defendants") alleging the following: violations under the terms of the retirement plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132 (Count I); violations of fiduciary duty requirements under ERISA (Count II); violations of ERISA's claims procedure requirements (Count III); and an individual-based

violation of ERISA's requirements to disclose plan documents upon request
(Count IV).  (ECF No. 19.)

The matter is presently before the Court on "Defendants' Partial Motion to
Dismiss"  (ECF No. 23).  The motion is fully briefed.  (ECF Nos. 24, 25.)  Finding
the facts and legal arguments sufficiently presented by the parties, the Court is
dispensing with oral argument with respect to the parties' motions pursuant to
Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the
Court is granting in part and denying in part Defendants' motion.

## I.  Statement of Facts

Plaintiff is a current employee of Defendant Ford Motor Company at the
Kentucky Truck Plant and has been employed for more than 23 years, beginning
around May of 1999.  Because of Plaintiff's various positions at Ford, he became
vested in the Ford-UAW Retirement Plan ("the Plan").  Under the Plan, a
participant's monthly benefit is determined by multiplying the participant's
accrued credited service by a benefit rate, which is based on the employee's job
classification and retirement date.  The Plan also provides that an employee
receives one year of "future service credit" for every year that the employee
received pay from the company, which includes times "an employee is absent from
work because of occupational injury or disease incurred in the course of such
employee's employment with the Company and on account of such absence

2

receives Workers' Compensation while on Company-approved leave of absence[.]"  (ECF No. 19 ¶ 15 Pg ID 84.)  In such cases, the employee is entitled to future service credit in the amount of forty hours a week.

The Summary Plan Description ("SPD") also provides that an employee continues to receive credit while "on [a]pproved sick leave while receiving Worker's Compensation."  (*Id.* ¶16.)  The SPD further provides that if the Workers' Compensation benefits are terminated under state law due to the length of time benefits have been paid or an employee reaches the maximum medical improvement level, the Plan would continue to include the time as future service credit.

Plaintiff suffered two work-related injuries during the course of his employment.  On May 27, 2010, Plaintiff sustained injuries while on the job.  As a result, Plaintiff was unable to work and was approved for medical leave from November 17, 2010 through January 10, 2014.  After Ford contested Plaintiff's Workers' Compensation claim, an Administrative Law Judge ("ALJ") awarded Plaintiff his benefits for the period of May 27, 2010 through November 13, 2019.  On November 21, 2014, Plaintiff suffered a second work-related injury while test driving a Ford vehicle.  As a result of the second injury, Plaintiff received approval for medical leave on January 1, 2015.  After Ford contested Plaintiff's Workers'

Compensation claim, an ALJ awarded Plaintiff his benefits for the period of November 21, 2014 through March 3, 2026.

According to Plaintiff, based on his employment with Ford from 1999 through the present, including the time periods where he was on medical leave and received Workers Compensation benefits, he is "entitled to at least 23 years of credited service." (ECF No. 19 ¶ 31, Pg ID 87.)  After Plaintiff received a letter in December of 2020 showing that credited service towards his retirement benefits "was less than what he is entitled to under the Plan," Plaintiff filed a claim for benefits on February 5, 2021. Plaintiff's claim was subsequently denied on May 6, 2021.  According to Plaintiff, the denial letter failed to reference the Plan provisions that discussed the fact that the time period that employees receive Worker's Compensation benefits is included in the accrual of credited service. (*Id.* ¶ 38 Pg ID 89.)  The letter also states that Plaintiff's claims for his 2012 injury was not granted, which Plaintiff disputes, does not list his subsequent receipt of Workers Compensation benefits for his 2014 injury (November 21, 2014 through March 3, 2026), or does not provide any descriptions of what materials are required to "perfect the claim" or any explanation as to why the materials are necessary. (*Id.*)

On July 21, 2021, Plaintiff appealed the denial decision.  On September 1, 2021, Ford drafted a letter that acknowledged receipt of Plaintiff's appeal and

4

notified Plaintiff that it required additional time to research his claim and that he would receive "a written response after the next Board meeting."  (*Id.* ¶ 40.) Plaintiff made several attempts to follow up on the response and by February 7, 2022, he sent a letter to the Plan Administrator inquiring about the determination of his appeal and requested Plan documents and information that were relevant to his claim and appeal.  Plaintiff's letter requested the following documents:

a.  A complete copy of his pension file;

b. Complete copies of all documents relied upon in deciding his claim for benefits and appeal;

c. Complete copies of all documents, records or other information submitted, considered or generated in the course of making a determination on his claim and appeal;

d. Complete copies of all documents and information containing administrative processes and safeguards for ensuring consistent decision-making;

e. Complete copies of the current Plan documents and the Plan documents in effect during his employment from the start of his employment through the present;

f. Complete copies of all Plan amendments from the start of his employment to the present;

g. Complete copies of the current summary plan description and summary plan descriptions in effect for the Plan from the start of his employment to the present; and

h. A complete copy of the trust agreement for the Plan in effect from the start of his employment with Ford through the present, together with all amendments thereto.

(*Id.* ¶ 45, Pg ID 90–91.)

On April 2, 2022, Plaintiff received a copy of the current SPD but did not receive any of the requested documents.  On April 22, 2022, Plaintiff's counsel sent a letter reiterating the written request from February 7, 2022, explaining that the documents requested were relevant to Plaintiff's appeal.  On July 5, 2022, the Plan Administrator sent an e-mail that included only some of the documents requested, including the "current Plan document, current Summary Plan Description, a document entitled 'Credited Service Calculation' dated February 26, 2015, and what appeared to be some but not all of the documents that were considered, generated or submitted in connection with [Plaintiff's] claim and appeal."  (*Id.* ¶ 49, Pg ID 92.)  However, the e-mail did not attach a copy of the previous version of the SPD that was in effect when Plaintiff suffered his work-related injuries and became entitled to Workers' Compensation Benefits.

On August 18, 2022, the Plan Administrator's counsel provided a Trust Agreement and amendments.  According to Plaintiff, as of the filing of the original Complaint on January 9, 2023, Plaintiff still has not received all of the requested Plan documents, including the Plan documents and SPD in effect at the time of his work-related injuries.

## II.  Legal Standard on a 12(b)(6) Motion to Dismiss

Defendants seek dismissal of Counts II and III of the Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  A motion to dismiss

pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI*

*Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  To

survive a motion to dismiss, a complaint need not contain "detailed factual

allegations," but it must contain more than "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action . . .."  *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders

'naked assertions' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.' "  *Id*. (quoting *Twombly*,

550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Majestic Bldg. Maint., Inc. v. Huntington*

*Bancshares Inc.*, 864 F.3d 455, 458 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at

7

678.)  Moreover, the plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however.  *Iqbal*, 556 U.S. at 668.

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss.  *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)).  A court that considers such matters must first convert the motion to dismiss to one for summary judgment.  *See* Fed. R. Civ. P 12(d).  However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

8

## III.  ANALYSIS

### A. <u>Breach of Fiduciary Duty Under ERISA (Count II)</u>

*1. Whether Plaintiff's claims under ERISA § 502(a)(3) are precluded by ERISA § 502(a)(1)(B)*

First, Defendants maintain that Count II of the Amended Complaint should be dismissed because Plaintiff's claim for breach of fiduciary duty under ERISA is based on the same injury and relief as his claim for denial of benefits, or a "repackaging" of Count I, which is precluded as a matter of law.  (ECF No. 23 at Pg ID 132.)  In Count I of the Amended Complaint, Plaintiff alleges a wrongful denial of benefits claim and seeks recovery under ERISA § 502(a)(1)(B), which provides in part that a plaintiff may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"  29 U.S.C. § 1132(a)(1)(B).  In Count II, Plaintiff brings a claim for a breach of fiduciary duty pursuant to ERISA § 502(a)(3), which similarly provides relief to participants and beneficiaries "to obtain other appropriate equitable relief, to redress such violations or to enforce any provisions of this title or the terms of the plan[.]"  *Id.* § 1132(a)(3).  The Sixth Circuit provides clear instructions to address instances when a plaintiff brings claims under both § 502(a)(3) and § 502(a)(1)(B):

> A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where

the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate.

*Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) (emphasis in original) (citing *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 840–42 (6th Cir. 2007).  Moreover, "the availability of relief under § 502(a)(3) is contingent on a showing that the claimant could not avail himself or herself of an adequate remedy pursuant to § 502(a)(1)(B).  *Id.* at 372–73. (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998)).

Defendants argue that Plaintiff's fiduciary duty claim and claim for denial of benefits claim both seek to remedy the same injury, which is "the loss of service credit he claims he is due under the Plan."  (EFC No. 23 at Pg ID 141.)  The Court disagrees.  In Count I, Plaintiff alleges that he is being harmed by "being deprived of benefits due under the terms of the Plan[,]" ECF No. 19 ¶ 66, Pg ID 97,  and seeks to have "Defendants to recalculate Plaintiff's and class members' credited service and pay Plaintiff and class members all the benefits to which they are entitled . . . ."  (*Id.* ¶ 68, Pg ID 97–98.)  In Count II, Plaintiff alleges injuries in the form of (1) systematic improper handling of claims, including "a failure to provide claims and appeal procedures that afford participants a full and fair review from denial of their claims, the failure to provide documents and information that Defendants are required to provide under ERISA and the failure to oversee and

monitor that the administration of the Plan conforms to the documents and

instruments governing the terms of the Plan and ERISA[,]" and (2) "failing to

disclose material terms of the Plan and/ or misrepresenting the terms of the Plan

resulting in harm to Plaintiff and putative class members."  (*Id.* ¶¶ 70,72 Pg ID 97–

98.)  The Court finds that these injuries are separate and distinct from each other,

and thus, Plaintiff's breach of fiduciary duty claim is not precluded by the denial of

benefits claim.  Regarding the remedies, although Plaintiff admits that some of the

remedies overlap, including the credit for service time that was denied, awarding

benefits under Count I does not have an effect on the alleged improper handling of

claims by Defendants.  *See, e.g., Hill v. Blue Cross and Blue Shield of Mich.*, 409

F.3d 710, 718 (6th Cir. 2005) ("The award of benefits to a particular [plaintiff]

based on an improperly denied claim for emergency-medical-treatment expenses

will not change the fact that [defendant] is using an allegedly improper

methodology for handling ... claims.").

*2.  Whether Detrimental Reliance is Required Under ERISA*

        Next, Defendant maintains that Plaintiff's breach of fiduciary duty must be

dismissed because Plaintiff failed to sufficiently plead a material

misrepresentation, or specifically, that he detrimentally relied in the alleged

misrepresentation.  ERISA provides that a person who is deemed to be a fiduciary[1]

"shall discharge his duties with respect to a plan solely in the interest of the

participants and beneficiaries."  *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416,

432 (6th Cir. 2006) (quoting 29 U.S.C. § 1104(a)(1)).  "A fiduciary breaches his

duty by providing plan participants with materially misleading information,

'regardless of whether the fiduciary's statements or omissions were made

negligently or intentionally.' "  *Id.* (quoting *Krohn v. Huron Mem. Hosp'l*, 173 F.3d

542, 546 (6th Cir. 1999).  A fiduciary who communicates misleading information

to plan participants regarding plan administration supports a claim of a breach of

fiduciary duty.  *See Drennan v. Gen. Motors Corp.,* 977 F.2d 246, 251 (6th Cir.

1992); *see also Moore*, 458 F.3d at 432 (providing examples of misleading

information to plan participants that support a breach, including "eligibility under a

plan [and] the extent of benefits under a plan.").  Generally, to establish a breach of

fiduciary duty claim under ERISA based on alleged misrepresentations, a plaintiff

must show: "(1) that the defendant was acting in a fiduciary capacity when it made

the challenged representations; (2) that these [representations] constituted material

misrepresentations; and (3) that the plaintiff relied on those misrepresentations to

---

[1] "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any
discretionary authority or discretionary control respecting management of such
plan or exercises any authority or control respecting management or disposition of
its assets ... or (iii) he has any discretionary authority or discretionary responsibility
in the administration of such plan." 29 U.S.C. § 1002(21)(A)

[his] detriment." *Moore*, 458 F.3d at 433 (citing *James v. Pirelli Armstrong Tire Corp.,* 305 F.3d 439, 449 (6th Cir.2002); *Van Loo v. Cajun Operating Co.*, 703 F. App'x 388, 394 (6th Cir. 2017).

Plaintiff alleges that Defendants breached their fiduciary duties pursuant to ERISA § 502(a)(3), which allows civil actions by participants, beneficiaries, or fiduciaries: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3).  Plaintiff's claim is based, in part, on Defendants failure "to disclose material terms of the Plan and/ or misrepresenting the terms of the Plan resulting in harm to Plaintiff and putative class members" in violation of ERISA § 102, 29 U.S.C. §1022.  (ECF No. 19 ¶ 72; Pg ID 99.) Defendants seek to dismiss Count II arguing that Plaintiff fails to allege that he detrimentally relied on the misrepresentations as required to allege a claim of breach of fiduciary duty.  (ECF No. 23 at Pg ID 125.)

In response, Plaintiff maintains that the Supreme Court's decision in *CIGNA Corp. v. Amara* removes the requirement for Plaintiff to demonstrate, or even plead, a detrimental reliance on Plan misrepresentations under ERISA.  *See* 563 U.S. 421 (2011).  The Court agrees.  In *Amara*, the Supreme Court analyzed whether ERISA § 502(a)(3), which authorizes "appropriate equitable relief,"

13

required a showing of detrimental reliance in order for a court to impose certain remedies. *Id.* at 443. The Court noted that, when considering "appropriate equitable relief," "any requirement of harm must come from the law of equity." *Id.* When a lower court seeks to "impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made." *Id.* On the other hand, the Court concluded that in cases where a court orders remedies such as contract reformation or "surcharge," which provides that a fiduciary must pay back money owed to plan participants, there is no requirement for a showing of detriment. *Id.* at 444. As such, a plaintiff is not always required to prove detrimental reliance when asserting a claim of misrepresentation or an act of fraud. *Id.* ("actual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents."); *see also Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 348 (6th Cir. 2018) (citing *SEC v. Capital Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 193 (1963) ("Fraud ... in the sense of a court of equity properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.")

     Under Count II of the Amended Complaint, Plaintiff seeks multiple forms of remedies from this Court:

(1) "declaring that Defendants breached their fiduciary duties and violated ERISA Section 404, 29 U.S.C. § 1104, and applicable regulations;"

(2)  "surcharging the fiduciaries and enjoining Defendants to immediately make Plaintiff and class members whole for all losses they have suffered as a result of their acts and omissions complained of herein including by enjoining Defendants to comply with the Plan as reformed so as to make Plaintiff and Class Members whole by providing credited service and benefits calculated in accordance with such credited service for all Plan participants who were or are injured on the job and were or are entitled to Workers' Compensation,

(3) "correcting the failure to disclose and the misleading, false or inadequate information provided to Plaintiff and Plan participants regarding entitlement to credited service and benefits following an injury on the job which results in entitlement to Workers' Compensation, requiring Defendant fiduciaries to disgorge all profits and benefits gained from their breaches of fiduciary duty; and"

(4) "such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs."

(ECF No. 19 82, Pg ID 102–03.)  These requests are not equivalents of estoppel but are a mix of declaratory relief and surcharge.[2]  Further, Plaintiff has sufficiently alleged a potential misrepresentation.  Thus, Plaintiff is not required to plead that he detrimentally relied on any misrepresentation to show a breach of fiduciary duty.  As the Supreme Court noted in *Amara*, "it is not difficult to imagine how the failure to provide proper summary information, in violation of the

---

[2] *Cf. Briggs v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 774 F. App'x 942, 948 n.8 (6th Cir. 2019) (noting that the plaintiff's fiduciary duty claim failed not because she could not show that the claim was not based on estoppel but because he could not show reasonable reliance or at the very least, a misrepresentation.)

15

statute, injured employees [because] plan changes would likely prove harmful. We

doubt that Congress would have wanted to bar those employees from relief."

*Amara*, 563 U.S. at 444.  Similarly, as Plaintiff alleges, to the extent that there was

a discrepancy between the Plan and the SPD, or a later update to the documents,

Plaintiff's being unaware of those changes or potentially misled would surely

prove harmful.  (*See* ECF No. 19 ¶ 18, Pg ID 85.)  As such, the Court finds that

Plaintiff has sufficiently pled a breach of fiduciary duty.

### B.  Violation of ERISA's Claims Procedure Requirements (Count III)

Defendants maintain that Plaintiff fails to state a claim of a violation of the

claim processing requirements pursuant to ERISA § 503, 29, U.SC. 1133, because

"the implementing regulations do not provide an independent cause of action under

these circumstances."  (ECF No. 23 at Pg ID 148.)  ERISA §503 states that:

> Every employee benefit plan shall –
>
> (1) provide adequate notice in writing to any participant or
>     beneficiary whose claim for benefits under the plan has been
>     denied, setting forth the specific reasons for such denial, written
>     in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim
>     for benefits has been denied for a full and fair review by the
>     appropriate named fiduciary of the decision for denying the
>     claim.

29 U.S.C. § 1133.  Conversely,  Plaintiff maintains that he has a cause of action

under Section 503 because he brings Count III—alleged violations of processing

16

requirements—pursuant to ERISA § 502(a)(3), ECF No. 19 ¶ 89, Pg ID 105, which again provides that an action may be brought "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Courts have held that "a failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy," and as such, "arguments of procedural failures or irregularities in the administrative review process may be raised in the context of an ERISA § 502(a)(1)(B) claim." *Greer v. Operating Eng'rs Loc. 324 Pension Fund*, No. 17-11832, 2017 WL 3891785, at *3 (E.D. Mich. Sept. 6, 2017) (discussing *Wilkins*, 150 F.3d 609, 619–20); *see also Lewandowski v. Occidental Chem. Corp.*, 986 F.2d 1006, 1008 (6th Cir. 1993) (noting that "[t]he failure to comply with ERISA's procedural requirements is not ordinarily a basis for substantive relief" (citation omitted)); *Dye v. Formica Corp. Emp. Ret. Plan*, No. 1:18-CV-155, 2019 WL 859224, at *4 (S.D. Ohio Feb. 22, 2019); *Prince v. Procter & Gamble Co.*, No. 1:13-CV-902, 2014 WL 2154890, at *7 (S.D. Ohio May 22, 2014) (quoting *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 100 (2013)) (noting that the penalty for failure to meet the U.S. Department of Labor's claims regulation (29 C.F.R. § 2560.503-1) is simply

17

immediate access to judicial review for the participant).  Moreover, Count III is

duplicative of, and seeks to redress the same injury as, Count I.  In raising his

claim of a violation of procedural requirements under ERISA (Count III), Plaintiff

argues that he "has been harmed and ***his rights to benefits and to pursue his***

***claims*** and ***review of denied claims were chilled, delayed and thwarted***."  (ECF

No. 19 ¶ 88, Pg ID 105 (emphasis added.))  This is a re-worded version of

Plaintiff's alleged injury in Count I—"Plaintiff and class members were harmed

and are ***being deprived of benefits due*** under the terms of the Plan."  (*Id.* ¶ 66, Pg

ID 97.)  This is further reason that a such a claim is "subsumed within" Plaintiff's

denial of benefits claim.  *Greer*, 2017 WL 3891785, at *3.  Thus, the Court finds

that Count III of Plaintiff's Amended Complaint must be dismissed as it is

properly pursued under Count I.[3]

## IV.   CONCLUSION

For the reasons stated above, the Court is dismissing Count III of the

Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P.

12(b)(6). Count II shall proceed with litigation.

---

[3] Because Count III must be dismissed for the reasons articulated, the Court need
not reach Defendants additional argument regarding whether Plaintiff's allegations
of "systematic failures" of the Plan Administrators fiduciary duty to adjudicate
claims and appeals have been sufficiently pled.  (ECF No. 23 at Pg ID 151–52.)
The claims of systemic failures are properly pled in Count II and can be addressed
once Plaintiff seeks class certification.

Accordingly,

**IT IS ORDERED**, that "Defendants' Partial Motion to Dismiss" (ECF No.

23) is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: August 25, 2023

19